Good morning. May it please the Court, I'm Alice Sinclair, Assistant Federal Defender on behalf of the appellant, Mr. Maong. This case presents another ineffective assistance of trial counsel claim, this one turning on counsel's allowing pervasive brutal error at the trial. And because respondent has in effect conceded that counsel performed unreasonably in permitting And I want to emphasize that the prejudice we're talking about in this case is Strickland prejudice. The claim is ineffective assistance. Strickland is the governing law. And so the prejudice inquiry is not whether there is sufficient evidence under Jackson v. Virginia to support a verdict absent the brutal error, but rather the impact of this error on the defense objective at trial. And it's not correct either, is that right? I mean, if Strickland applies, we don't do a second round? That's correct. That's my position. And so the question is what effect this error likely had on the existence of reasonable doubt. The error has to be objectively unreasonable? That's correct. And my contention is that the State court's failure to identify the prejudice here is objectively unreasonable for several reasons. First, the prosecutor in closing argument specifically stated that it was the co-defendant's confession together with the double hearsay of the witness Vath, who also reported on the co-defendant's statements, that jointly pulled the rug out from under Mr. Mwang's defense. Those were the prosecutor's words. Mr. Mwang's defense was that he was not the one who shot the gun and killed the person. It was the ‑‑ it was somebody else in the car. The disagreement is whether it was over the person who was a co-defendant or some other person. But either way, Mr. Mwang was driving the car. They were going looking for the gang members. One of two other people in the car shot. Now, what happened is the co-defendant said I was the one who shot. Mr. Mwang said, no, it was somebody else who did the shooting. What's the prejudice? The facts are slightly more complicated, although the ones you've recited are accurate enough. Mr. Mwang's defense was lack of intent, regardless of who the shooter was. And his lawyer sought and obtained a lesser included instruction on accessory. Their theory was that he drove without knowing that someone else was going to fire the shots. So regardless of whether clumsy or co‑defendant Viramontes was the actual shooter, the defense was lack of intent, which Mr. Mwang had told the officers. Now, the prosecutor said you cannot ‑‑ The law court was skidding. The law court wasn't that ‑‑ he had given instructions or there was an understanding that there was not to be any shooting until someone said go ahead or something. That's correct. And the prosecutor argued you cannot believe Mr. Mwang's protestation that he didn't know there was going to be a shooting and was surprised by this because the clumsy character that Mr. Mwang also had mentioned in his statement has been fabricated. And all of the evidence of fabrication comes from the mouth of the co‑defendant, Mr. Viramontes, both in his confession to Detective Martin and in his statements to Vang, which came out as double hearsay in the testimony of Dr. Lee. Throughout the closing argument, the prosecutor harped on the fact that the clumsy character had been made up and the jury was instructed that a false statement by a defendant can be taken as consciousness of guilt. That fabrication of evidence. This is all going towards his credibility on an intent question. That's correct. And that's relevant because let's take the inverse approach to the prejudice analysis. We set aside the Viramontes statements, or we're arguing here primarily that counsel should have obtained a severance because it was impossible to prevent this kind of brute and problem given the number of times that Mr. Viramontes had referred to my client. So we analyzed prejudice by saying what would have been admissible in a trial of Mr. Mwang alone. Mr. Viramontes' statement to the police could not have come in at all. It would have been completely inadmissible under Lilly. Mr. Vaff's statement, insofar as it quoted Mr. Viramontes, also could not have come in at all under Lilly and also under Crawford now. So the only evidence, because no eyewitnesses identified the car, the driver, or the shooter, there were no bullets found, there was no gun, there was no physical evidence, no eyewitness evidence placing Mr. Mwang at the scene. All you would have had is Mr. Mwang's own statement, which admitted driving the car, thereby establishing accessory liability, as his lawyer conceded, but providing nothing about the car, because we no longer have fabrication, which would undermine his credibility. We no longer have the fact that Mr. Mwang shared Mr. Viramontes' anger and went out to cruise for rival gang members in anger, because that evidence all came from the mouth of Mr. Viramontes, not from Mr. Mwang. His own statement, had that been the only evidence against him, could not legally have supported a conviction for anything other than accessory. So the only evidence that this inadmissible evidence affected the jury's assessment of the credibility of his denial of intent and of the case overall is more than enough to tip the balance under the Strickland standard, which is whether there's a reasonable probability of a different outcome but for the error. I want to emphasize that this prejudice finding is also compelled, in my view, when we look at the jury instructions as a whole. The briefing pointed out that the jury was given a very brief standard instruction not to consider the statements of one defendant against another. The Bruton case itself says that we cannot assume that the jury can follow the instruction under such circumstances. And I'd like to point out in this context that the district judge's citation of dicta from Richardson, saying that that presumption doesn't hold where the statement is anything less than putting a gun in the co-defendant's hand, is taken out of context. Richardson said that when there is a redaction, there was no redaction here, when there is a redaction, the fact that nonetheless the jury might inferentially implicate the defendant. Don't you have a second level of prejudice problem here, though, which is that the clumsy story was just inherently improbable and there was lots of evidence against it? Well, I think that that evidence is so much closer, absent the fabrication evidence, that it can't defeat a prejudice finding. Both sides in our briefs have characterized the testimony of the witnesses as to the number of occupants of the car rather differently, but you have the testimony. And the prosecutor in closing acknowledged that the eyewitnesses differed, as witnesses often do, as to what had happened. And the prosecutor, I have the page number here somewhere from the argument. It's Report as Transcript 1140 to 1141. The prosecutor reviewed which eyewitnesses thought there were only two people in the car, which thought there might be three. So there was quite a bit of room in the evidence for the jury to find either way. Mr. Muang's lawyer had a demonstration done with the car, which showed that it was three people. Mr. Muang's defense did not turn on the identity of the shooter one way or another. His defense turned on his own lack of intent, which ultimately is independent of who was behind the wheel of the car. Professor, you said earlier that the idea that they went after them because they were angry came from Mr. Viramonte's. The testimony as to what Mr. Muang said from the detective was that Viramonte's came over to him, told him about the shooting. He was upset, upset, and was he angry? Upset and angry. And then they said they're going to go look for the other gang. Now, that comes from Mr. Muang, who was looking for the other gang. I was reviewing this testimony just a few minutes ago. This is page 283 of the transcript. 283. And it was Mr. Muang who told Mr. Viramonte's, let's go cruising for some A.C.s. The looking for rival gang members, the looking for rival gang members, the looking for rival gang members, again, is distinct in our view, as it was the theory at trial, from intent to commit a shooting. And the statements that were most inculpatory as to either defendant in that regard came from Mr. Viramonte's. Mr. Muang's own statement, which I'm frantically looking for. I think you quoted on page 15 of your brief that something about no shooting was intended at the time. I thought it was no shooting was to occur until they'd agreed to do it or something. That's an interesting point, Your Honor. And I was noting, again, in reviewing closing arguments, that it was, in fact, both defense lawyers challenged the accuracy of the officer's retelling of the confession. These confessions were not recorded. The contemporaneous notes of them were sketchy at times and omitted certain facts. Ms. Copps, on behalf of Mr. Muang, directly challenged the notion that her client had stated that a shooting was intended at a later date or time. Detective Martin, who took Viramonte's confession, placed that statement in Viramonte's mouth. Detective Gynes later said that Muang had also made such an admission. But those words were not in his notes, although many other, much less significant details were. Ms. Copps challenged the idea that Mr. Muang had, in fact, said any such thing. Does that help you? I think it does, Your Honor. I thought it was your whole defense, that they hadn't intended to shoot him then. The part that was used against Mr. Muang, and that we have always maintained Mr. Muang never said, is that there was some sort of intent to commit a shooting in the future, which the jury might have taken to affect their assessment of what the intent was at the time of this driving. Well, let's assume you remove that statement entirely, then, since you don't claim Mr. Muang didn't say it, Mr. Viramonte didn't say it. All right. So they do. They get angry. They say, let's go get this go-cruise for this other guy, and they just shot us up. They go. The co-defendant shoots, whether it's a co-defendant or a snowman. What's the difference? Well, Mr. Muang... I'm sorry. Snowman is the co-defendant. Whether it's clumsy or a snowman, why does it matter? Mr. Muang's statement to the detectives that he did not think there was going to be any shooting, that he drove Mr. Viramonte to look for someone who might have been involved, but without an intent to do anything, was actually supported by the expert testimony of Detective Gynes as to gang activity, who said it is true that gang members often will not use a car that can be linked to any of them in committing a shooting. They will sometimes scout out, but they will then go steal a car specifically for the purposes of the shooting so that it cannot be traced to them. Mr. Muang was driving his sister's car, which could easily be traced. I think that's a fine argument to make to a jury, that when they went out to look for the gang members who had just shot up their car and they shot them back, that it's not likely that they really would have done that because they were driving their sister's car. And if a juror believes it, that's wonderful for you. But if a juror doesn't believe it, it would not be so necessary to say Mr. Muang has said he didn't expect there to be any shooting. And you can believe that because why on earth, Mr. Muang, who lived with his family, who were unaware of his gang activity, we have several witnesses to that, who was close to his family, he would not have driven his sister's car, which could be immediately traced to her from the license plate, if he thought something was happening. I can understand the argument. Maybe it's right. Maybe it's wrong. But I don't see why it's any different if Mr. Viramonte suddenly pulled out a gun and shot or Clumsy pulled out a gun and shot. Either way, it was a big surprise to your client. And I'm agreeing with you on that point, Judge Reinhart, that I don't think the identity of the shooter is dispositive. The question was whether the credibility of Mr. Muang's denial of knowledge of intent of anyone whom he was driving to shoot. Thank you. May it please the Court. Lloyd Carter for the Deputy Attorney General for the appellate. Well, I agree with counsel and with the Court. It really doesn't matter as far as our position is concerned who fired the shots. The real question facing the jury and the issue we believe that the state Supreme Court decided this on was whether or not Mr. Muang had the intent to carry out with his fellow gang members this reprisal shooting against the other group. We believe that the AEDPA applies in this case, and it's unfortunate that we don't have a reasoned state court opinion. We believe that this Court in August, in the case of Brown v. Palmatier, discusses when you have no reasoned lower court decision, what standard should apply. And you said the objectively unreasonable test, which we agree with the Court. You also added a line that in these circumstances, federal habeas courts accord the state court decision less deference than in the standard habeas. Doesn't it actually turn out to be more deference? I mean, doesn't it turn out that if the state court doesn't say anything, then what we are essentially doing is attributing omissions to them and saying if there's anything reasonable they could have said. Why isn't that more deference? Well, I think it could be. I think it certainly deserves a great deal of deference. Whatever. It's this Court's words that you should use less deference. Well, I know. I'm trying to understand it. I find it very odd that if they write something. Let's take this instance. If they had written, for example, that the reason that we don't think there was any prejudice is because there was absolutely no evidence that there was a third person in the call. And that's just wrong because there was some evidence. Right. So then I guess we could say that's unreasonable. But if they say nothing, then we just look at the universe of whether any reasonable person could have come to this conclusion and the state courts get more deference, not less deference. Am I wrong about this? Well, however you choose to. Well, I think the difference they said is that there's an independent review. Right. And we acknowledge that this Court certainly with no reason state court opinion, you have to you have to review the record to see. But we're confident that the state court rules correctly, that the district court ruled correctly, and that it's not objectively unreasonable for a jury to find. And even if we exclude what do you do about the credibility problem and his whole defense, the witness's whole defense is that it was wrong. I mean, it was clumsy. And you show the jury that he's a liar. Then are they going to believe his story that he was totally surprised by the shooting? Once you show that the witness is not credible, isn't that prejudicial to his defense? Well, obviously, any prosecution is prejudicial to the defense of the prosecution does its job. Even if we had a severed trial. If you did that, we're assuming that this was allowing this testimony to come in with ineffective assistance. That's the first prop. Right. The question is, is it prejudicial? And the argument essentially is it's prejudicial because it allowed the destruction of the defendant's credibility. Well, and it's the people's position that the damage to Mr. Wong's credibility did not just come from the damaging statements of Mr. Viramontes. It came from the testimony of the detectives that it was virtually impossible for a shooter in the backseat. And we can suspend for a moment whether it's snowman or clumsy as the shooter, whoever the shooter was, Mr. Wong contended that the shooter was in the backseat. Now, we had the testimony from from the witnesses to the shooting that the shooter was in the front seat, halfway hanging out of the backseat. I thought there was some controversy about that. There is some controversy, but there was there was at least some testimony. This trial was riddled with conflicts. You've got gang members testifying. You've got Mr. Vath, who I think his testimony alone provides the substantiation for the prosecution claim that Mr. Wong's story simply was not credible. But what we're looking at is if the record were as you represented or as these, then you'd be in good shape. But it really it is true that the eyewitnesses, different as to how many people were in the car, different as to whether the guy was the shooter was in the front seat or the backseat, right? So there's some and also there was some evidence that there were some clumsies around. We don't dispute any of that. And in fact, we would say that it doesn't matter whether it was clumsy or snowman who did the shooting. The only issue that the jury had doesn't matter. What matters is whether the defendant was surprised. Correct. And we're saying that under the only testimony on that is he says he was surprised. So the question is, does the jury believe him? If the jury believes him when he says he's surprised, then at least it wouldn't have been. What was his first degree? Was that right? Right. But so and if the jury doesn't doesn't believe them, they'll convict him. If they do, at least you get a lesser conviction. We don't know if that's the issue. Is his testimony true that he was surprised he didn't have intent? And we think it's inherently an incredible story. It's just not believable as you help me clear me up on something. Yes. First review this case. I dictate most of my file. And I dictated that they long and the people are in the car. They agreed that there would be no shooting until some signal was given. And notwithstanding this, did I just bring that up? That's not in the record. Well, you have to remember that Mr. Wong and Mr. He doesn't have to remember anything. Just answer the question. What is here in the record about that? The question is that there were conflicting stories given. Did anybody give a story that they agreed that there would be no shooting until some signal was given? That was the original story to the police from Vath, the fellow gang member who was not in the car, from Snowman, who ultimately admitted to being the shooter and to Mr. Wong, that they were going to. They all three said that originally. Well, Mr. Mong's original story was that they were going to go cruising or looking for ACs. And you can certainly it's reasonable to infer that they're angry and upset and are going to seek some vengeance. But did they get Thompson asked about saying that there was an arrangement that they would not do the shooting? Now they were going to shoot some other time. Who testified that that was the detective said that the snowman said that that Wong said it, both of them. Wong stuck to his original story that he was surprised that clumsy started shooting. Did the detective say that Wong ever said that we had that the shooting would be at some later date? I don't remember if the specifics of Wong ever said that they planned to do the shooting. Varamontes ever say that, of course. Varamontes and Vath said that they following the shooting, that the three of them cooked up the story, that they would shift blame to the clumsy. And then ultimately, Varamontes and Vath both recant. But what's important here is if you assume a trial where Varamontes isn't present, a severed trial, you still have Vath who is impeached. And I don't believe counsel will contend that you couldn't impeach Vath. He suddenly develops amnesia at the trial, doesn't remember telling the cops any of his various stories. But the jury is certainly entitled to think that both Vath and his fellow gang member, Mr. Mwang, are lying about the inherently credible story that they go to commit a shooting and decide to commit it. If they had committed it 15 minutes later, I think they would still be guilty. They went to that location. But suppose Mwang's understanding is we're talking about intent to kill at the time of the attack. And he's going to say, OK, nobody's going to shoot until the signal's given. So where that leaves you is nobody's going to shoot until the signal's given. The signal's not given. Nobody's going to shoot. Somebody shoots. He doesn't intend the shooting at the time the shooter does the shooting. Now, doesn't that dispel intent to kill that particular person at that time? Yes, except that Mwang never told the police that we didn't intend to shoot at that time. I thought he said that there was to be no shooting until the signal was given or somebody said that. I think that was Mr. Veramontes who told the police that they were going to get another car, steal a car and go back and commit the shooting. I think Mwang just said they went to the scene to reconnoiter, so to speak, and that he is surprised about Clumsy. I think it's also inherently incredible to presume that they went looking for this other gang that had just shot at them and went unarmed. I think the jury you have to infer intent from circumstantially. There was no direct evidence. He didn't announce we're going to go shoot these people at this hour. But a jury can reasonably announce to the contrary. That's the problem. That's OK. No, I think that the question here is can the state court, the California Supreme Court, is it objectively unreasonable that they concluded that there was not prejudice under a Strickland standard? And I think we have to presume that the state court followed federal law correctly. And even should this court disagree with the factual scenario, I think you have to show deference to the fact that the state Supreme Court saw the facts otherwise. Reasonable people might Problem is we have no idea what they did. We don't even know if they applied Strickland. They could have applied something else. Well, I think you have to presume that they applied federal law correctly. I think there's a presumption of correctness that they followed federal law. I don't think that each time there would be a silent denial that federal courts would have to do something about it. I think the question is, is there a way of illustrating that I don't understand Delgado, but I understand it's there, but I don't understand it. I thought perhaps you could illuminate it some. My time is up, Your Honor. Are there more questions? Thank you very much, Counsel. I realize that I ran over last time, but I did want to answer the question about the state of the record. Detective Gynes testifying about Mr. Muang's confession did say at RT905 in response to the question, what, if anything, did he, Muang, tell you? He said that they had planned to do a drive-by shooting, but that one of the subjects had jumped the gun and proceeded to shoot before the directed time. I believe that is correct. That answers your question, Your Honor. When it comes to the reasonableness of the state court's finding of no prejudice, I think it's important that we keep in mind the U.S. Supreme Court's repeated discussions in a line of cases beginning with Lee v. Illinois, which is cited in the brief, that just because the defendant himself confesses and that most of the facts are the same as the co-defendant's confession, that does not prevent brutal injuries. In fact, it makes it even more damaging. Cruz v. New York is another great discussion. By clear that this defense is a defense, that is, that I intended to kill him but not then? You know, that's a little ‑‑ it's clear that that was what the detective said Muang first said in his own defense. I think it would because the intent has to be at the moment of the shooting. Because a jury can get confused about what time the intent had to be held and what that means. And in this case, frankly, I think the defense lawyer tried to get around that problem a little bit by simply, by questioning whether Mr. Muang actually ever had said that. Viramontes and Vath did so repeatedly. It is unclear whether Gynes was misremembering and putting in Muang's mouth what the others had said or remember something that was actually said to him. But the bottom line is, Mr. Muang always maintained that he went out in his sister's car to help Viramontes look for people who might know something about the earlier shooting, but without any intent for anyone to get hurt. And that's enough for an accessory conviction and nothing more serious. Anything else is unreasonable. Thank you, Your Honors. Thank you, Counsel. The case is there. It will be submitted. Thank you.
judges: Reinhardt, Thompson, Berzon